NEW JERSEY MORTGAGE AND TITLE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109011.   Promulgated August 28, 1944.

*Charles P. Swindler, Esq.*, and *Sydney A. Gutkin, Esq.*, for the petitioner.

*Robert S. Garnett, Esq.*, for the respondent.

1280

OPINION.

KERN, *Judge*: The critical question now before us in this case is whether the reorganization or exchange between the Mortgage Co. and petitioner comes within the provisions of the statute providing that gain or loss resulting therefrom should not be recognized for tax purposes. Respondent now says it does not. This question was raised by respondent affirmatively, after the deficiency was determined, by his answer to the amended petition. Petitioner now contends that it does. If petitioner's contention is correct, its basis as to the property

acquired by the reorganization will be the same as that of its predecessor corporation. See sec. 113 (a) (6), Revenue Act of 1934.[1]

The Guarantee Mortgage & Title Co. (herinafter called "the old corporation") was in default on due and unpaid interest on its guaranteed mortgages and bonds and on those of its wholly owned subsidiary on May 31, 1935, in the sum of $315,815; and it had cash on hand of only $80,699.53, as alleged in the petition which it filed in the Chancery Court of New Jersey on June 17, 1935, for its reorganization or rehabilitation as an insurance company. This petition was filed by the corporation upon authorization of its board of directors. No proceeding was instituted by its bondholders. The court, having taken jurisdiction of the action filed by the corporation, issued a decree on May 12, 1937, approving a plan of reorganization, pursuant to which the assets of the old corporation were conveyed to the petitioner corporation by the old corporation, its subsidiary corporation, the trustee in the rehabilitation proceedings, and the trustee or depository of certain of its assets. The old corporation's bondholders of all kinds exchanged their bonds in the principal amount of $2,348,893 for bonds of the New Jersey Mortgage & Title Co., the petitioner, which had been organized on May 20, 1936. These bonds bore interest from October 1, 1936, and were of equal face value with the old bonds. In addition, the old bondholders received preferred voting stock of petitioner, $1 par value, in the sum of $236,878, for arrears of interest on the old bonds to the date in 1935 when the reorganization proceedings were begun; and also received *as bondholders of petitioner* cash in the sum of $24,017.48 in payment of interest of one percent *on petitioner's* bonds for the 6-month period from the date of issuance to March 31, 1937. The stockholders of the old corporation received shares of petitioner's voting common stock, par value of $25, equal in number to those held in the old corporation, which had had, however, a par value of $100.

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by section 112 (b) to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

The reorganization provisions of the Revenue Acts of 1934, 1936, and 1938, as amended by section 213 (g) (1), Revenue Act of 1939,[2] provide for two situations under subsection (B). The first provision of clause (B) provides for the "acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation," with a proviso of construction of the word "solely" added to the effect that "the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability" shall be disregarded. In the instant case petitioner acquired all of the property of the old corporation from the old corporation or persons acting on its behalf.

It becomes pertinent to inquire in the instant case, therefore, whether there was any payment by the new corporation which would take it out of the strictly limited category of reorganization exchanges allowable by the statute of property "solely for * * * stock." As the Supreme Court said in the *Southwest Consolidated Corporation* case, *supra*, " 'solely' leaves no leeway."

Respondent argues that the exchange was not "solely for * * * stock" since under the plan petitioner took the assets of its predecessor subject to unsecured debts and assumed to pay all accounts payable of the old company which were unpaid on June 17, 1935, when the petition in the Chancery Court was filed, and actually did pay these unsecured creditors of the old corporation $38,598.94 under the plan approved by the decree. It is obvious, however, that payment of such obligations of the predecessor corporation is only a discharge of a liability antedating the plan, and that these obligations were not changed in nature and amount by the plan or by any court decree. It is clearly distinguishable from the indebtedness of old bondholders paid in cash in the *Southwest Consolidated Corporation* case, *supra*. In that case the lien of the bonds was removed from the debtor's property by the decree of the Court ordering a judicial sale as a step in the reorganization and the rights of the nonparticipating bondholders

---

[2] SEC. 213. ASSUMPTION OF INDEBTEDNESS.

(g) DEFINITION OF REORGANIZATION UNDER PRIOR ACTS.—

(1) Section 112 (g) (1) of the Revenue Acts of 1938, 1936, and 1934 are amended to read as follows:

"(1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; or the acquisition by one corporation in exchange solely for all or a part of its voting stock of at least 80 percentum of the voting stock and at least 80 percentum of the total number of shares of all other classes of stock of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected."

who received the cash payment were limited and defined by the same decree. In this case the obligations assumed and paid by petitioner were the obligations of the old corporation and were assumed and paid by it as such without any change as to nature or amount.

Respondent also argues in like tenor that the payment of one percent interest to the new bondholders on the new bonds of petitioner arose out of the reorganization plan and was an inducement to the exchange. Whatever effect it may have had as an inducement, it was not an obligation of the old corporation liquidated by cash nor did it represent any part of the *quid pro quo* the property of the old corporation was transferred. It was a payment on the obligations of the *new corporation*, and might as well have been made at the end of the first six months or later. Nor need the payment of taxes and expenses of the reorganization be considered as any bar. *Claridge Apartments Co.*, 1 T. C. 163; reversed on another issue, 138 Fed. (2d) 962.

More serious is the contention that the issuance of the new bonds. although identical in principal amount with the old, did not constitute an assumption of the old corporation's debt within the rule of the *Southwest Consolidated Corporation* case, *supra*, since they were not payable in the same terms and were, in effect, "income bonds" since interest on them was payable in excess of 2 percent only when it could be justified by the corporation's earnings. The new bonds were of a single issue, bore 5 percent interest, but payable in excess of 2 percent only on the conditions just stated, ran for 10 years from the maturity date of the old bonds, and replaced 23 separate issues of the old corporation, which, no doubt, varied in term and possibly also in interest rate. The record does not show their precise tenor, but we may assume differences between the new and the old, and must assume a difference of term of 10 years in favor of the old bonds on the facts stipulated. We are of the opinion that this mollification of the terms. of the bonded indebtedness as to interest rate and maturity is immaterial, and that the controlling fact is that the bonds of the new corporation were substituted for the bonds of the old corporation in the exact amount of the principal of the indebtedness. See *Harden F. Taylor*, 43 B. T. A. 563; affd., 128 Fed. (2d) 885 (C. C. A., 2d Cir.); *Louis E. Stoddard, Jr.*, 47 B. T. A. 584, reversed on another issue, 141 Fed. (2d) 76. We conclude that the issuance of the new bonds constituted an assumption of the old corporation's debt.

Since the petitioner acquired from the old corporation substantially all of the latter's property in exchange solely for its voting stock, we conclude that the transfer to petitioner constituted a reorganization within the letter of the first clause of section 112 (9) (B) (1), as amended.

Having decided that the reorganization between petitioner and the old corporation comes within the letter of the first clause of section 112 (g) (1) (B) of the Revenue Act of 1934, as amended, it is now necessary for us to consider the question of whether there is such continuity of interest between the old corporation and petitioner as would justify our conclusion that there was here a nontaxable reorganization.

We are of the opinion that there is such a continuity of interest. The financial situation of the old corporation at the time of the reorganization was one of equitable insolvency, not of insolvency in the bankruptcy sense. While its assets, if liquidated at forced sale, would probably have been less than its liabilities, as appears from the court decree quoted in our findings, the same assets, if remaining, as they did remain, in the hands of a going concern would, and did, have a value in excess of its liabilities. This is apparent from the plan of rehabilitation approved by the court by the same decree. At the same time its current assets were so depleted prior to the rehabilitation proceedings that it was unable to meet its obligations as they matured and became payable. Under this view of the old corporation's financial condition, the capital structure of petitioner effected by the reorganization seems justified by business considerations. The bondholders of the old corporation were at all times merely its secured creditors and as such became bondholders of the new corporation. However they were given temporary control over it, through their ownership of voting preferred stock, to be assured of a management favorable to their interests until any immediate danger of bankruptcy had passed. The common stockholders of the old corporation were its owners and as such became common stockholders of the petitioner, this common stock representing ownership equity which was considered by the parties to the plan of reorganization and by the court approving it to be of sufficient value to warrant the issuance of petitioner's common stock having a par value of one-fourth the par value of the old corporation's common stock. Thus, the proprietary interest of the common stockholders of the old corporation was continued in the common stockholders of petitioner, although their control of petitioner was in abeyance until the retirement out of income of petitioner's voting preferred stock. However, the requirement of continuity of interest does not, in the absence of statutory specification, carry with it a requirement of continuity of control. *John A. Nelson Co.* v. *Helvering*, 296 U. S. 374; *Schweitzer & Conrad, Inc.*, 41 B. T. A. 533; *Muskegon Motor Syndicate* v. *Commissioner*, 134 Fed. (2d) 904.

It is not enough for a decision of this case to conclude that the exchange between the mortgage company and petitioner was a reor-

ganization as defined by section 112 (g) (1) (B) of the Revenue Act of 1934, as amended by section 213 of the Revenue Act of 1939. In order to have the same basis as its predecessor corporation pursuant to the provisions of section 113 (a) (6) of the Revenue Act of 1934, petitioner must show that it acquired its property "upon an exchange described in section 112 (b) to (e) inclusive."

We are of the opinion that petitioner acquired its property upon an exchange described in section 112 (b) (4).[3] Here the old corporation, or those acting on its behalf, transferred, pursuant to the order of the New Jersey court, all of its assets to petitioner and in return therefor petitioner issued stock or securities. The court decree provided that "the issuance of the securities by the new corporation [the petitioner] * * * constitute sufficient consideration for the transfer of the said assets by the mortgage company, its subsidiary and the trustee to the new company." The stock and securities were not issued by petitioner to the old corporation and then distributed by the latter to its own stockholders and bondholders. Here the parties to the reorganization took a short cut and, instead of issuing its stock and securities to the old corporation from which it had acquired its property, petitioner issued its stock and securities directly to the stockholders and bondholders of the old corporation. These latter, instead of surrendering their stock and bonds of the old corporation to the old corporation in exchange for the stock and securities of the new corporation, surrendered them directly to the new corporation, the petitioner herein. Regardless of this short cut, we are of the opinion that the old corporation exchanged its property in pursuance of the plan of reorganization solely for stock or securities in another corporation a party to the reorganization (the petitioner) and, therefore, the exchange is one described in section 112 (b) (4). It follows that petitioner's basis as to the property acquired from the mortgage company was the same as that of its predecessor corporation, under section 113 (a) (6).

On the issue presented, our decision is in favor of petitioner.

*Decision will be entered under Rule 50.*

---

[3] SEC. 112 * * *
  (b) * * *
  (4) Same.—Gain of Corporation.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.